**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Rick Bryant, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

Bonded Accounts Service/Check
Recovery, Inc., a Minnesota corporation,

Defendant.

Civil No. 00-1072 (RHK/JMM)

**MEMORANDUM OPINION AND ORDER**

---

Thomas J. Lyons, Jr., The Consumer Justice Center, P.A., Maplewood, Minnesota and Peter F. Barry, Barry Law Office, Ltd., Maplewood, Minnesota, for Plaintiff.

James F. Roegge and Alana K. Bassin, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for Defendant.

---

## Introduction

Plaintiff Rick Bryant filed suit in this Court alleging that Defendant Bonded Accounts Service/Check Recovery, Inc. (hereinafter "Bonded") violated the Fair Debt Collection Practices Act ("FDCPA") by conduct described more fully below. Before the Court are motions from each party. Bonded has moved to dismiss Bryant's Complaint for failure to state a claim upon which relief can be granted. Bryant, for his part, has moved for an Order certifying a class of similarly situated consumers. The Court will first decide the pending dispositive motion and then decide the motion for class certification.



FILED OCT 30 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

## Background[1]

Rick Bryant received medical treatment from Fairview Northland Clinic ("the Clinic") sometime prior to April 28, 1999. (Compl. ¶ 4.) Bryant was unable to make payments to the Clinic for that care; as a result, the Clinic turned Bryant's account over to Bonded for collection. (Id. ¶ 5.) Bryant began receiving dunning letters and telephone calls from Bonded.[2] (Id. ¶ 6.) On April 28, 1999, Bonded sent a dunning letter to Bryant that identified the creditor as "Fairview Northland Clinic" and stated that the amount due was $58.00. The text of the letter reads as follows:

> THIS IS SOMETHING WORTH YOUR SERIOUS CONSIDERATION. WILL YOU BE ABLE TO GET CREDIT WHEN YOU REALLY NEED IT? IN CASE OF AN EMERGENCY WILL YOU BE REFUSED CREDIT BECAUSE OF THIS UNPAID ACCOUNT WE HAVE FOR COLLECTION?
>
> DON'T TAKE SUCH A CHANCE – IF YOU ARE UNABLE TO PAY THIS ACCOUNT IN FULL NOW, COME IN TODAY AND ARRANGE FOR SETTLEMENT. DO NOT DELAY THIS IMPORTANT MATTER.

(Compl. Ex. 1.)

On April 27, 2000, Bryant filed a one-count Complaint against Bonded alleging a violation of the FDCPA. Specifically, Bryant alleges that the April 28, 1999 letter

---

[1] For purposes of Bonded's Motion to Dismiss, the Court takes as true all facts alleged in the Complaint, and draws all reasonable inferences in favor of the Plaintiff, the non-movant. See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

[2] A "dunning" letter is one that makes a persistent or urgent demand, as in a demand for money. See Webster's Third New International Dictionary 701 (1986).

violates sections 1692d(2), 1692e(10), and 1692f of the FDCPA. In the factual allegations of the Complaint, Bryant also asserts that the April 28, 1999 letter violates Minn. Stat. § 332.37, subd. 14. (Compl. ¶ 7.) Bryant does not allege a separate cause of action under § 332.37; rather, Bryant argues that, to the extent Bonded has violated a state statute regarding permissible debt collection methods, that same conduct constitutes a violation of the FDCPA.

Bryant seeks only statutory damages pursuant to 15 U.S.C. § 1692k(a)(2), together with costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3). Bryant does not allege that he has suffered any actual damages as a result of the April 28, 1999 letter.

## Analysis

### I. Bonded's Motion to Dismiss

#### A. Standard of Decision

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take as true the allegations contained in the complaint. Cooper v. Pate, 378 U.S. 546, 84 S. Ct. 1733 (1964) (per curiam). A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the

complaint that there is some insuperable bar to relief."

Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978)). Viewing the complaint in this manner, the court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 67, 73, 104 S. Ct. 2229, 2232 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957)).

Together with its reply memorandum on the motion to dismiss, Bonded submitted a Supplemental Affidavit of Alana K. Bassin, to which is attached a copy of "Defendant's Answer to Plaintiff's First Set of Interrogatories." (Suppl. Aff. of Alana K. Bassin, Ex. F.) Rule 12(b) provides that

> [i]f, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b). The Court will exclude the "Defendant's Answer to Plaintiff's First Set of Interrogatories" from its consideration of Bonded's motion and evaluate the motion under the standard for Rule 12(b)(6) discussed above.

### B. Alleged Violations of the FDCPA

Bryant alleges that the April 28, 1999 dunning letter violates three separate

provisions of the FDCPA. First, Bryant asserts that, by sending the dunning letter with the above-quoted language, Bonded used "language the natural consequence of which is to abuse the hearer or reader" in connection with collecting a debt. 15 U.S.C. § 1692d(2). Second, Bryant asserts that Bonded used a "false representation or deceptive means to collect or attempt to collect" a debt. Id. § 1692e(10). Finally, Bryant contends that Bonded, in sending the April 28, 1999 letter, used "unfair or unconscionable means to collect or attempt to collect" a debt. Id. § 1692f.

The parties contend that Bryant's FDCPA claims must be evaluated from the standpoint of "the least sophisticated consumer." (Def.'s Mem. Supp. Mot. to Dismiss at 6; Pl.'s Mem. Opp. Mot. to Dismiss at 4, 8, 10-11.) The Eighth Circuit has recently held that, for claims brought under section 1692e, "[i]n evaluating whether a debt collection letter is false, misleading or deceptive, the letter must be viewed through the eyes of the unsophisticated consumer." Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000) (emphasis added) (citing Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997)). The "unsophisticated consumer" standard is

> a standard "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) quoting Gammon v. GC Servs. Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994). This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collections letters.

Duffy, 215 F.3d at 874-75 (final citation omitted). This Court will apply the "unsophisticated consumer" standard as set out in Duffy.

The Eighth Circuit has not yet set out a standard for evaluating whether a debt collector's conduct violates either § 1692f or § 1692d, which Bryant invokes in his Complaint. Other courts have assessed whether a debt collector has utilized an "unfair or unconscionable" method of debt collection (prohibited by 15 U.S.C. § 1692f) through the eyes of a "least sophisticated consumer." See Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996) (applying "least sophisticated consumer" standard to § 1692f claim); Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1099 (D. Or. 2000) (same); Johnson v. Eaton, 873 F. Supp. 1019, 1022-23 (M.D. La. 1995) (same); Kimber v. Federal Fin. Corp., 668 F. Supp. 1480, 1486-87 (M.D. Ala. 1987) (same). In light of the Eighth Circuit's articulation of an objective "unsophisticated consumer" standard for claims under § 1692e, and the practice of other courts to apply an objective standard to claims under § 1692f, this Court concludes that the "unsophisticated consumer" standard stated in Duffy should apply to Bryant's § 1692f claim.

That leaves Bryant's § 1692d claim. The leading appellate court decision discussing the standard by which § 1692d claims are evaluated -- and the case cited by both parties here -- is Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985). In Jeter, the Eleventh Circuit considered whether the district court was correct in considering "whether a 'reasonable consumer' would be deceived, [misled], or harassed by the letters

at issue . . ." to analyze a § 1692d claim.[3] Jeter, 760 F.2d at 1172 (internal quotation marks omitted). The court of appeals ruled that neither a "reasonable consumer" nor a "least sophisticated consumer" standard should be used in evaluating whether, under § 1692d, the natural consequence of a debt collector's conduct is to "harass, oppress, or abuse." See id. at 1179. The Eleventh Circuit observed that

> [w]hether a consumer is more or less likely to be harassed, oppressed or abused by certain debt collection practices does not relate solely to the consumer's relative sophistication; rather such susceptibility might be affected by other circumstances of the consumer or by the relationship between the consumer and the debt collection agency.

Id. The Eleventh Circuit indicated its belief that "the consumer protective purposes of the FDCPA" required the adoption of a standard for § 1692d that was analogous to the "least sophisticated consumer" standard for § 1692e. Id. Therefore, the court of appeals held that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." Id. In the absence of binding Eighth Circuit precedent, the Court finds the Eleventh Circuit's reasoning persuasive and will analyze Bryant's § 1692d claim using the perspective stated in Jeter.

---

[3] In Jeter, a debtor sued a debt collector alleging that dunning letters she received from the debt collector were false or deceptive (in violation of § 1692e) and amounted to "conduct the natural consequence of which is to harass, oppress, or abuse" (in violation of § 1692d). Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172 (11th Cir. 1985). With respect to the § 1692e claim, the Eleventh Circuit held that the question of whether a debt collector's means are "deceptive" or "misleading" must be viewed from the standpoint of the "least sophisticated consumer." Id. at 1175.

Having identified the lens through which the Court will view each component of Bryant's FDCPA claim, the Court turns to the specific provisions of the FDCPA that Bryant contends Bonded has violated.

### *1. Language the natural consequence of which is to abuse the reader*

Bryant alleges that, the question posed in the April 28, 1999 dunning letter – IN CASE OF AN EMERGENCY, WILL YOU BE REFUSED CREDIT BECAUSE OF THIS UNPAID ACCOUNT WE HAVE FOR COLLECTION? – is "language the natural consequence of which is to abuse the . . . reader." (Compl. ¶¶ 7-8, 12.) In its entirety, § 1692d(2) prohibits "the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." 15 U.S.C. § 1692d(2). The Eleventh Circuit has noted that, when subsection (2) is read in context, it is evident that it "was meant to deter offensive language which is at least akin to profanity or obscenity. Such offensive language might encompass name-calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks." Jeter, 760 F.2d at 1178. The Eleventh Circuit noted that such a reading of subsection (2) is consistent with the FDCPA's purpose, inter alia, of ensuring that "every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner." Id. (citing 123 Cong. Rec. 10241 (1977)).

The Court views the above-quoted language through the eyes of "a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or

abuse." Jeter, 760 F.2d at 1179. Jeter does not, however, contemplate that the language of a dunning letter be viewed through the subjective eyes of an abnormally sensitive reader. See id. at 1179 (reasoning that "the consumer protective purposes of the FDCPA require us to adopt an analogous standard [to the objective "least sophisticated consumer" standard] for violations of § 1692d.") The Court can conceive of no set of facts consistent with the allegations in the Complaint to support a conclusion that the natural consequence of the above-quoted language is to "abuse" an "unsophisticated" reader. The above-quoted question from Bonded's dunning letter is not "offensive" in a way that is akin to profanity or obscenity. Accordingly, Bonded is entitled to dismissal of Bryant's claim that the dunning letter violates 15 U.S.C. § 1692d(2).[4]

***2. Use of a false representation or deceptive means to attempt to collect a debt***

Bryant alternatively alleges that the dunning letter from Bonded runs afoul of § 1692e(10) of the FDCPA. Section 1692e(10) prohibits the use of a "false representation or deceptive means to collect or attempt to collect" a debt. 15 U.S.C. § 1692e(10). A collection letter can be considered deceptive where it is "open to more than one reasonable interpretation, at least one of which is inaccurate." Cloman v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993). However, the FDCPA "does not extend to every bizarre

[4] Bryant specifically pleaded a violation of subsection (2) of § 1692d. He did not assert in his Complaint that Bonded's conduct was more generally "conduct the natural consequence of which is to harass, oppress, or abuse," as prohibited by the general provision of § 1692d. Accordingly, the Court does not consider whether Bryant could have stated a claim under the general provisions of § 1692d.

or idiosyncratic interpretation" of a collection letter, only to a reasonable interpretation by an unsophisticated consumer. Rosa v. Gaynor, 784 F. Supp. 1, 3 (D. Conn. 1989). Thus, to prevail on its motion to dismiss the § 1692e(10) claim, Bonded must show that there is no set of facts under which Bryant can show that, through the eyes of an "unsophisticated consumer," the language quoted from the April 28, 1999, letter is reasonably capable of more than one interpretation, one of which is inaccurate.

Bryant contends that the letter might be read by an "unsophisticated consumer" to suggest that, if faced with a medical emergency, the recipient might be refused treatment because of the unpaid balance owed to the hospital. Bonded responds by emphasizing that the words "medical services" never appear in the letter. Bonded focuses on the fact that the letter states only that Bryant might be "refused credit" and further argues that such a future consequence might occur and, therefore, is not actionable under section 1692e(10). Bonded contends that Bryant's proposed interpretation of the letter is so "ingenious" as to be unreasonable.

Bonded does not squarely address the fact that the above-quoted collection letter was sent to an individual who owed money on a bill for medical services. The dictionary definition of "emergency" is

> 1: an unforseen combination of circumstances or the resulting state that calls for immediate action: as (a) a pressing need: EXIGENCY; (b) **a sudden bodily alteration such as is likely to require immediate medical attention (as a ruptured appendix or surgical shock)** . . . .

Webster's Third New International Dictionary 741 (1986) (emphasis added). Viewing the collection letter in its entirety, an unsophisticated consumer who owed money to a clinic for health care services could reasonably interpret the letter as saying that, if a situation arose in which he required immediate medical attention, he might be denied credit and, as a result, be denied necessary medical attention. The Court cannot conclude that, as a matter of law, Bryant's proposed reading of the dunning letter, viewed "through the eyes of a naive and unsophisticated person," is so bizarre as to be "unreasonable."

Furthermore, Bonded has failed to show that there is no set of facts under which Bryant's interpretation of the quoted language could be considered inaccurate. Bryant references a Minnesota statute that provides that debt collectors or collection agencies shall not "in collection letters or publications, or in any communication, oral or written, imply or suggest that health care services will be withheld in an emergency situation." Minn. Stat. § 332.37, subd. 14. Minn. Stat. § 332.37 is part of a regulatory statute governing debt collectors. Although Bonded argues that there is no private cause of action for violations of § 332.37, the Court need not address that issue. Assuming that Bonded's dunning letter can reasonably be read as implying that the consumer might be denied credit and (as a result) emergency medical attention due to his outstanding debt, the statute is, at a minimum, relevant to whether such an interpretation is "inaccurate" for

purposes of 15 U.S.C. § 1692e(10).[5]

In light of the allegations in the Complaint, and based upon the very high standard for dismissal under Rule 12(b)(6), the Court concludes that Bonded has not established that it is entitled to dismissal as a matter of law. Accordingly, the Court will deny Bonded's motion to dismiss the § 1692e(10) claim.

### *3. Use of unfair or unconscionable means to collect/attempt to collect a debt*

Finally, Bryant claims that the question – IN CASE OF AN EMERGENCY WILL YOU BE REFUSED CREDIT BECAUSE OF THIS UNPAID ACCOUNT WE HAVE FOR COLLECTION? – constitutes an unfair or unconscionable means to attempt to collect a debt, see 15 U.S.C. § 1692f, because it threatens the debtor with the possibility that medical treatment will be denied. "[Section] 1692f allows the court to sanction improper conduct that the FDCPA fails to address specifically." Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 528 (E.D. Pa. 1996) (citing Masuda v.

---

[5] Similarly, at the oral argument on the motion to dismiss, counsel for Bryant cited to Minn. Stat. § 144E.16, subdivision 3 for the proposition that a state statute also prohibits the withholding of medical services based on a person's inability to pay for them. That provision, part of the chapter involving Minnesota's "Emergency Medical Services Regulatory Board," was apparently repealed in 1999. Plaintiff's counsel has subsequently provided the Court with a citation to Minn. Stat. § 144E.101, regarding ambulance service requirements. Subdivision 4 of § 144E.101 provides that "[a]n ambulance service shall not deny pre-hospital care to a person needing emergency ambulance service because of inability to pay or because of the source of payment for services if the need develops within the licensee's primary service area or when responding to a mutual aid call." This provision may also be relevant to whether the interpretation suggested by Bryant is "inaccurate."

Thomas Richards & Co., 759 F. Supp. 1456, 1461 n.10 (C.D. Cal. 1991). The conduct that may be deemed "unfair or unconscionable" is not limited to the acts enumerated in subsections (1) through (8). See Tsenes v. Trans-Continental Credit & Collection Corp., 892 F. Supp. 461, 466 (E.D.N.Y. 1995); see also Adams, 926 F. Supp. at 528 (concluding that "the specific provisions do not limit the general applicability of the proscription against unfair practices.")

Even if the "emergency" question in the letter is not false or deceptive for purposes of § 1692e(10), it may nevertheless run afoul of the prohibition in § 1692f against the use of "unfair or unconscionable" means to collect a debt. Viewing the dunning letter from the standpoint of an "unsophisticated consumer," the Court cannot conclude that there is no set of facts consistent with the allegations in the Complaint under which Bryant could prevail. As discussed above, this claim depends on whether an unsophisticated consumer who owes money for health care services could reasonably interpret the letter as implying that the consumer might be denied credit and (as a result) emergency medical attention because of an outstanding debt. Based on the foregoing, the Court will deny the motion to dismiss with regard to the alleged violation of § 1692f.

## II. Bryant's Motion for Class Certification

### A. Standard of Decision

To prevail on the class certification motion, Bryant bears the burden of proving that he, as the class representative, and the members of the proposed class, satisfy the four

threshold requirements of Rule 23(a). If the Rule 23(a) requirements are met, Bryant must also show the class can be maintained under Rule 23(b). Bryant seeks to certify the following class pursuant to Rule 23(b)(3):

> All consumers of the State of Minnesota who have received a collection letter similar to Exhibit 1 of Plaintiff's Complaint, seeking to collect money on behalf of a medical care and/or service provider, which language suggests that the consumer(s) will be denied future medical treatment.

(Pl.'s Mem. Supp. Mot. for Class Cert. at 1.)

### *1. Rule 23(a) requirements*

Rule 23(a) of the Federal Rules of Civil Procedure sets out four prerequisites that must be satisfied before a party can obtain the certification of a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Bonded attacks Bryant's ability to satisfy each of these requirements and complains that the proposed class is too broad to be certified.

Bryant has refined his proposed class definition through the course of briefing this motion, and his position was clarified at oral argument. Counsel for Bryant informed the Court that, based on the defendant's interrogatory responses, Bonded apparently sent the same form letter that Bryant received (attached as Exhibit 1 to the Complaint) to 619

individuals with addresses in Minnesota within one year of April 27, 2000.[6] (See Supplemental Aff. of Alana Bassin, Ex. F at ¶ 7.) Of the 619 individuals who received the letter in question, 176 owed debts that Bonded classified as "medical." (Id.) Bryant clarified that the class he seeks to represent consists of the 176 Minnesota residents with "medical" debts who were sent the same form letter he received. The proposed class definition should therefore be revised as follows:

> All Minnesota residents to whom, within one year of April 27, 2000, Bonded sent the form collection letter identified by the code number N62 (attached as Exhibit 1 to the Complaint) in an effort to collect money on behalf of a medical care and/or medical service provider.

Counsel for Bonded acknowledged that a revision of the class definition that is specific as to the form letter sent would address Bonded's concerns about the overbreadth of the proposed class and satisfaction of the numerosity requirement.

With respect to the commonality requirement of Rule 23(a)(2), it appears that the claims of each member of the redefined class of 176 Minnesotans contains a common issue of fact or law.[7] All would share the legal question of whether the language in the form letter violates either § 1692e(10) or §1692f of the FDCPA. Numerous courts have held that a claim that language in a form letter violates a statute presents common issues

---

[6] Bryant filed his Complaint in this action on April 27, 2000. The relevant statute of limitations for an FDCPA claim is one year.

[7] Counsel for Bonded acknowledged at the oral argument that she did not believe there was an individualized "bona fide error" defense that would defeat satisfaction of the commonality requirement.

of fact and law sufficient to satisfy Rule 23(a)(2). Daley v. Provena Hosps., 193 F.R.D. 526, 528 (N.D. Ill. 2000) (citing cases); Talbott v. GC Servs. Ltd. Partnership, 191 F.R.D. 99, 103 (W.D. Va. 2000) (same).

To satisfy the typicality requirement of Rule 23(a)(3), the proposed class representative must show that his claims are sufficiently similar to those of the absent class members. Typicality is inherent in Bryant's class in that "each class member was subjected to the same [alleged] FDCPA violation . . . when they were sent the dunning letter." Talbott, 191 F.R.D. at 104. Bonded argues that Bryant cannot satisfy the typicality requirement because one cannot assume from Bryant's receipt of the allegedly illegal form letter that all of the putative class members also received the allegedly illegal form letter. Bonded is laboring under a basic misassumption regarding FDCPA claims. "A debt collector violates the FDCPA by *sending* a notice containing unlawful provisions. Whether the notice is received is irrelevant to the issue of liability." Irwin v. Mascott, 96 F. Supp. 2d 968, 976 (N.D. Cal. 1999) (citing Mattson v. U.S. West Communications, Inc., 967 F.2d 259 (8th Cir. 1992)) (emphasis in original). Through interrogatory responses, Bonded has acknowledged that it sent an "N62" form letter to the 176 Minnesota residents who are putative class members, including Bryant. Bryant's claim is typical of those possessed by the putative class members.

To satisfy Rule 23(a)(4), Bryant must demonstrate that he will adequately protect the interests of the class, and that there are no antagonistic interests between him and the

class. See In re Wirebound Boxes Antitrust Litig., 128 F.R.D. 268, 270 (D. Minn. 1989) (Murphy, J.). Although Bonded asserts that "the main plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer," Bonded fails to identify what that possible defense is. The Court is satisfied that Bryant has an adequate interest in the outcome of this case to participate fully.[8] Nor does it appear that Bryant has any conflicting claims with other class members.[9] Finally, Bryant's counsel is sufficiently experienced in consumer class action litigation to be certified as class counsel. (See Aff. of Thomas J. Lyons, Jr.) The Court concludes that the adequacy of representation requirement is also met.

### 2. *Maintenance as a class under Rule 23(b)(3)*

Assuming Bryant can satisfy the Rule 23(a) prerequisites, he must show that his proposed class can be maintained as a class action under Rule 23(b)(3), which authorizes

---

[8] Bonded has questioned Bryant's ability to finance this litigation. The only significant expense that Bonded has identified, however, relates to mailing class notice as required by Rule 23(c)(2). Given that the size of the class is approximately 175 individuals, the Court would anticipate that the cost of preparing and mailing class notice would not exceed $200.00.

[9] Bryant has requested statutory damages in his Complaint and does not seek to recover compensatory damages. A debt collector who has violated a provision of the FDCPA, however, will be liable to the person involved in an amount which includes "any actual damage sustained by such person as a result of such failure." 15 U.S.C. § 1692k(a)(1). There is no evidence that any of the 175 other persons to whom the dunning letter was sent might have a claim for actual, compensatory damages. If it appears that some of the class have actual damages claims, the Court can, under Rule 23(c)(4) and 23(d), make such additional orders as are necessary for the conduct of the class action, including the entry of an order decertifying the class.

maintaining a class action where the court finds that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). Thus, the two key characteristics of a Rule 23(b)(3) class are (1) a predominance of common questions of law and fact, and (2) the superiority of the class action to other methods available for adjudication of the controversy.

On the issue of superiority, Bonded has argued that the absent class members may be substantially limited in their potential recovery if the suit is maintained as a class action. A debt collector who violates the FDCPA is strictly liable to the plaintiff for "statutory damages" in an amount "not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). Where the lawsuit has been brought as a class action, the named plaintiff may recover the same amount in statutory damages as he or she could have recovered had the suit been brought in an individual capacity. The absent class members, however, may be awarded "such amount as the court may allow . . . , without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B)(ii).

Based on Bryant's revised definition of the class, there would be 175 absent class members. There is no evidence in the record regarding Bonded's net worth. Although Bryant's counsel confirmed that he had received financial information from Bonded in discovery, he also indicated that his client doubted the accuracy of the financial data received and that experts were reviewing the data. If Bonded's net worth is $17.5 million, then the Court could award up to $175,000.00 in statutory damages to the class.[10] If, however, Bonded's net worth is only $1.75 million, the most that the Court could award to the class in statutory damages would be $17,500.00, or $100.00 per person.

The maximum potential award of statutory damages if this action were maintained as a class action is clearly relevant to "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). In light of the uncertainties concerning the damages that could be awarded to absent class members if this action were to be maintained as a class action, the Court concludes that Bryant has failed to establish that a class action is the superior method for adjudicating claims regarding Bonded's form letter. The requirements of "predominance of common issues" and "superiority" are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision. Having determined that

---

[10] If each putative class member brought a separate lawsuit, he or she could recover up to $1,000 in statutory damages. Thus, the absent class members could, suing individually, collectively recover from the Defendant up to $175,000 in statutory damages.

Bryant has failed to demonstrate the "superiority" element of Rule 23(b)(3), the Court need not address whether common issues of fact and law predominate. The Court will accordingly deny Bryant's Motion for Class Certification.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that

(1) Defendant Bonded Account Service/ Check Recovery, Inc.'s Motion to Dismiss (Doc. No. 13) is **GRANTED IN PART** with respect to Bryant's claim of a violation of 15 U.S.C. § 1692d(2), and, in all other respects, **DENIED**. Plaintiff's claim that Defendant violated 15 U.S.C. § 1692d(2) is **DISMISSED WITH PREJUDICE**; and

(2) Plaintiff Rick Bryant's Motion for Class Certification (Doc. No. 22) is **DENIED**.

Dated: October 30, 2000

RICHARD H. KYLE
United States District Judge